THE STATE, EX REL. YOUNGS, *v.* BOARD OF ELECTIONS OF
LUCAS COUNTY ET AL.

(No. 4259—Decided July 3, 1947.)

Messrs. *Lord, Hayward, Smith & Notnagel,* for
relatrix.

Mr. *Joel S. Rhinefort,* prosecuting attorney, *Mr.
Jerome J. Jesionowski, Mr. Harry Friberg* and *Mr.
Lehr Fess,* for respondent Board of Elections of Lucas
county.

Mr. *Harold T. Towe,* for respondent Board of
Trustees of Washington township, Lucas county.

CARPENTER, J. Seeking to incorporate a village by the procedure outlined in Sections 3526 to 3531, inclusive, General Code, 45 electors, over half of whom were freeholders of Washington township, Lucas county, on June 23, 1947, filed a petition with the township clerk addressed to the township trustees asking them, among other things, to order an election "to obtain the sense of the electors (in the territory described in the petition, which included practically all of that township) upon such incorporation," to be known as the village of Secor.

On that date, two of the trustees met and by resolution found the petition to be adequate as required by law and directed that an election be held July 7, 1947, and that notices by publication and posting be given all as provided for by statute. A copy of that resolution, certified by the township clerk and signed by the two trustees, was, on June 24, 1947, filed with the respondent Board of Elections of Lucas county, which board is proceeding to conduct such election.

July 1, 1947, the relatrix, Hazel J. Youngs, a taxpayer and elector in the township, having requested the prosecuting attorney of Lucas county to bring an action to prohibit the board of elections from proceeding with such election and having been refused by him, filed the petition herein seeking to prohibit such election.

Two reasons are alleged why the action of the township trustees was illegal and void:

1. That a large part of the territory sought to be incorporated into a village has been laid off into village lots, a plat of which has been recorded. It is now urged that by reason thereof, the only proper procedure for the establishment of the contemplated village is by petition to the board of county commis-

sioners of Lucas county, as provided for in Sections 3517 to 3525, inclusive, and 3532 *et seq.*, General Code.

2. That (a) the resolution of the trustees was not approved by all the trustees or a majority of them at a regular or special meeting; (b) that no notice of the calling of any meeting for the passage of the resolution was given; and (c) that the two trustees who signed the resolution "were not authorized to, nor did they act as a duly elected, qualified and acting board of trustees in their attempt to enact and pass said purported resolution."

From the agreed statement of facts before the court, it appears that large portions of the territory described have been laid off in village lots, plats of which have been recorded. It appears also that at the time the petition was filed, June 23, 1947, one of the trustees "was absent from the United States" and was not notified of the special meeting held by the two with the clerk at which the resolution was adopted; that later the same day, after the formal resolution had been typed, it was signed by the two separately and not in the presence of each other.

1. The respondent board of elections demurred to the petition on the ground that the relatrix had an adequate remedy at law, especially as provided in Section 3531, General Code. Looking to *State, ex rel. Stanley,* v. *Bernon et al., Bd. of Elections,* 127 Ohio St., 204, 187 N. E., 733, and *State, ex rel. Smith,* v. *Hummel, Secy., of State,* 146 Ohio St., 341, 66 N. E. (2d), 111, it seems that prohibition is an appropriate remedy in Ohio in this type of action, if the record discloses that the action of the trustees was illegal.

2. Did the township trustees of Washington township have jurisdiction to entertain the petition filed with them and direct the holding of the election?

Looking to the statutes in question and their history, it appears that in 66 Ohio Laws, 150, the procedure for incorporation of villages by petition to the county commissioners was set up. With some amendments, this procedure is still in effect (Sections 3517 to 3525 and 3532 *et seq.*, General Code). Under Section 3517, General Code, this method applies when the territory sought to be incorporated is "laid off into village lots, a plat of which territory has been acknowledged and recorded as is provided with respect to deeds" or "has been laid off into such lots and surveyed and platted by an engineer or surveyor," etc.

In 1896 (92 Ohio Laws, 333), what are now Sections 3526 to 3531, General Code, were enacted, expressly supplementing what is now Section 3525, General Code. Section 3526, General Code, provides that "when the inhabitants of any territory or portion thereof desire that such territory shall be incorporated into a village" they may make application to the trustees of the township. This was the procedure followed in the instant case.

The same Legislature that passed this in April, in February before (92 Ohio Laws, 26), amended what is now Section 3517, to enable inhabitants of an island or islands to incorporate "without such plat having been first made."

In 1902, in 95 Ohio Laws, 469, provision was made for the incorporation of territory "surrounding a summer resort." Under such situation, an election is held in the territory.

In view of this legislative history and the fact that in 92 Ohio Laws, 333, what are now Sections 3526 to 3531, General Code, were enacted subsequently to and supplementing the then existing plan of incorporation which applied only to platted territory, it seems

obvious that the Legislature meant what it said when it used the language, "any territory or portion thereof," and thereby created a new procedure to accomplish incorporation cumulative to the one then existing and which it had amended at the same session. This conclusion was reached in *Libby* v. *Paul, County Recorder,* 17 N. P. (N. S.), 433, which cites and quotes from an unreported decision by the Court of Appeals for Cuyahoga county rendered in 1914.

3. It is contended that, because the two trustees were not in session together when they signed the resolution, their action was invalid. The agreed statement of facts shows that the resolution was passed in the afternoon at a formal special session, and in the evening after it had been typed, the trustees were separate when each signed a copy. The official action was what took place in the special session, and the signing of the copy later was not necessary to give it validity. *Ratcliff* v. *Teters,* 27 Ohio St., 66.

4. Was the action of the two trustees taken at a special meeting at which the third trustee was not present and of which he had no notice valid?

Again legislative action gives us some guide. At common law, as to an official body of this kind all members had to be present in order to have a quorum. This was recognized in *State, ex rel. Cline,* v. *Trustees of Wilkesville Township,* 20 Ohio St., 288, 293, where the court, speaking in reference to proceedings of townships, said:

"* * * in matters of public concern, though it is necessary for all to be present, yet the majority will conclude the minority. In this state, however, the rule of the common law has been abrogated in the case of township trustees. By the 7th section of the act of March 14, 1853 (S. & C., 1567), the number of

trustees is fixed at 'three,' and by the 14th section it is declared that 'a *majority* shall be a *quorum* to do business at all meetings of the trustees.' "

That case gave effect to the statute, that a majority was a quorum, and was followed in *Place* v. *Taylor,* 22 Ohio St., 317, 319.

That statute has since been repealed, and now nowhere does the statute define what shall be a board of trustees' quorum.

The statute so modifying the common law having been repealed and nothing enacted to take its place, it may well be inferred that the common law was restored.

Even when that statute was in effect and a majority constituted a quorum, notice to the nonattending members was necessary. The reason for this is well expressed in *Slicer* v. *Elder,* 2 W. L. M., 90, 2 Dec. Rep., 218, which was decided while the statute was in force, as follows:

"Under this provision as to township trustees, a *majority* may act at *special* meetings, as well as at *regular* meetings, the time and place of which latter is fixed by statute.

"But in order to render the acts of *two* trustees, at a special meeting, obligatory and valid, *all* must have reasonable *notice* of it, unless the notice be *waived.* This is necessary to protect the public against imposition, and for this purpose they have a right to require that all shall know of special meetings, so that their discretion, at least, may be exercised in determining the necessity for attending. The statute, construed in the light of public policy and authority, requires this. Its *object* was not to prevent the attendance of all the trustees, but to enable a majority to act if all *did not attend.* The common law required the presence of

all at all meetings, and, of course, all were required to have notice. The common law rule has only been changed, so far as to enable a majority to act, if all do not attend. Where, by law, a corporate body can delegate its powers to one member as agent, he may act; but township trustees have no power to delegate the authority of all to any one.

"As to *regular* meetings, the time and place of which is fixed by law, no notice is necessary, so far as acts authorized to be done at such meetings are concerned."

The law contemplates three township trustees acting as a board and the public is entitled to the judgment of three, or at the least, to the opportunity of each to exercise his right of individual expression on the public business.

One trustee having been absent and without notice of this important business at the special meeting, the action of the two is void, and for that reason the peremptory writ will be granted.

*Writ allowed.*

STUART and CONN, JJ., concur.